IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA     *

    v.     *

                             Criminal No.: 2:14-CR-0005-KS

RODERICK EDWARDS     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR COMPASSIONATE RELEASE
## UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

Roderick Edwards, through his attorneys, respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19 and his worsened conditions of confinement.

Edwards suffers from severe obesity, which places him at serious risk of becoming severely ill from COVID-19. Factoring in good conduct time, Edwards has served nearly 50 percent of his sentence. The global COVID-19 pandemic, combined with Edwards' medical conditions, presents an "extraordinary and compelling reason" for relief. This Court should issue an order reducing Edwards' sentence to time served.

### I.     PROCEDURAL BACKGROUND

On June 10, 2014, Edwards pled guilty to conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. Edwards was on supervised release for a prior federal case and was sentenced by this Court on June 23, 2014, to 60 months for violation of that release based on this new conviction.[1] On

---

[1] Crim. No. 2:09-cr-00022-KS-MTP-1.

1

September 16, 2014, this Court sentenced Edwards to 178 months for his new charge, to run consecutively. Edwards' total sentence is 238 months.

Edwards is serving his sentence at FCI Lompoc, the low security prison within the Lompoc Correctional Complex. The complex has reported nearly 1,000 cases of COVID-19 and five inmate deaths since the beginning of the pandemic. BOP, *COVID-19,* https://www.bop.gov/coronavirus/index.jsp. Edwards' projected release date, according to the Bureau of Prisons (BOP), is February 28, 2031.

Edwards is 37 years old and suffers from severe obesity. Ex. 1 (Medical Records). The Centers for Disease Control and Prevention (CDC) have labeled persons with obesity as individuals at risk of severe illness if they contract COVID-19. CDC, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Edwards' medical condition places him at risk of severe illness if he were to contract COVID-19.

Due to his medical conditions and the COVID-19 pandemic, Edwards submitted an administrative request for compassionate release to the BOP, and on October 30, 2020, his request was denied. Ex. 2 (Administrative Request and Denial). Thirty days have lapsed since Edwards' initial request. Thus, Edwards has exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).

## II. LEGAL BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through

2

the abolished parole system. S. Rep. No. 98-225, at 121 (1983). This compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what constituted "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). However, it was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, which adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria.

Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). Under the amended statute, defendants can move for a reduction of sentence based upon extraordinary and compelling reasons whenever "the defendant has

3

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239.

### III. ARGUMENT

Judges around the country have found that a defendant's vulnerability to COVID-19 constitutes "extraordinary and compelling reasons" for relief. Edwards' underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. Further, Edwards does not pose a danger to the community, and a balancing of the § 3553(a) factors warrants relief.

#### A. The Court Has Jurisdiction to Grant Edwards' Immediate Release.

The First Step Act's objective was to increase courts' flexibility to grant compassionate release and minimize the BOP's role in the process. As courts are no longer constrained by the BOP's determination of when relief is warranted, this Court has the jurisdiction to grant Edwards' motion for compassionate release. *United States v. Cantu,* 423 F.Supp. 3d 345, 349 (S.D. Tex. June 17, 2019); *see also, United States v. Elias,* 984 F.3d 516 (6th Cir. 2021) (noting that the First Step Act removed the BOP as the gatekeeper for motions for compassionate release); *United States v. McCoy,* 981 F.3d 271, 276 (4th Cir. 2020) (same); *United States v. Jones,* 980 F.3d 1098, 1101(6th Cir. 2020) (same); *United States v. Gunn,* 980 F.3d 1178 (7th Cir. 2020) (same); *United States v. Brooker,* 976 F.3d 228 (2d Cir. 2020) (same).

In accordance with § 3582(c)(1)(A)(i), Edwards requested compassionate release from the warden of FCI Lompoc. Ex. 2. His request was denied on October 30, 2020. *Id.* Thirty days have passed since Edwards made his initial request. Courts have found that the exhaustion requirement is satisfied upon the passage of 30 days since a prisoner's request for compassionate release, regardless of whether the BOP issues a denial of the request in the meantime. *United States v. Cantu,* 423 F.Supp. 3d 345, 349 (S.D. Tex. Jun 17, 2019).[2]

Moreover, it is the official position of the BOP that a defendant "may now file a motion for compassionate release directly with the sentencing court 30 days after making a request to the BOP or after exhausting their administrative remedies." *See* BOP, *First Step Act – Frequently Asked Questions*, https://www.bop.gov/inmates/fsa/faq.jsp#fsa_compassionate_release (last accessed Feb. 5, 2021).

The language of the compassionate release statute and the Program Statement issued by the BOP itself also support this interpretation. *See* 18 U.S.C. § 3582(c)(1)(A); U.S. Dept. of Justice, Fed. Bur. Of Prisons, Program Statement 5050.50 (Jan. 19, 2020) ("Under 18 U.S.C. § 3582(c)(1), an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response under subparagraph (a), the

---

[2] *See also, United States v. Haney*, 454 F.Supp.3d 316, 321 (S.D.N.Y. Apr. 13, 2020) (" [§ 3582(c)(1)(A)] requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of the facility before filing a motion."); *United States v. Spears*, Case No. 3:98-CR-0208-SI-22 (D. Or. Oct. 15, 2019) (a defendant can file after 30 days without exhaustion); *United States v. York*, Case No. 3:11-CR-76 (E.D. Tenn. July 18, 2019) (same).

denial from the General Counsel under subparagraph (d), *or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier."*) (emphasis added). Accordingly, Edwards has satisfied the exhaustion requirement, and his motion is ripe for review.

>    **B. The Court Has Authority to Determine that Edwards' Vulnerability to COVID-19 Constitutes an "Extraordinary and Compelling Reason" for a Sentence Reduction.**

Federal judges across the country and in this district have held both that they have the authority to define "extraordinary and compelling reasons" for release, and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. *See e.g., United States v. Guston,* Crim. No. 3:12-CR-116-CWR-FKB-3 (S.D. Miss. Jan. 15, 2021); *United States v. Hunt,* Crim. No. 3:12-CR-115-CWR-FKB-1 (S.D. Miss. Dec. 22, 2020); *see also, United States v. Elias,* 984 F.3d 516 (6th Cir. 2021); *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020); *United States v. Jones,* 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn,* 980 F.3d 1178 (7th Cir. 2020); *United States v. Brooker,* 976 F.3d 228 (2d Cir. 2020).

When enacting § 3582(c) as part of the Crime Control Act of 1984, Congress tasked the Sentencing Commission with defining the phrase "extraordinary and compelling," and also required that any judicial order modifying a sentence be "consistent with applicable policy statements" issued by the Sentencing Commission. *See* 28 U.S.C. § 994(t). The Sentencing Commission followed the directive and issued a

policy statement, but that policy statement has not been updated to reflect changes made by the First Step Act of 2018.[3]

However, as courts around the country – including in this district – have found, the policy statement directly conflicts with the compassionate release statute, making it inapplicable to any motions filed by defendants under the statute. *See, United States v. Hunt,* Crim. No. 3:12-CR-115-CWR-FKB-1 (S.D. Miss. Dec. 22, 2020); *United States v. Kelly,* No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104341, at *7 (S.D. Miss. May 1, 2020); *see also, United States v. Cantu,* 423 F.Supp. 3d 345 (S.D. Tex. June 17, 2019). Without an applicable policy statement, district courts are free to determine what constitutes "extraordinary and compelling" reasons to warrant a sentence reduction under § 3582(c)(1)(A). *See, e.g., United States v. Elias,* 984 F.3d 516 (6th Cir. 2021); *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020); *United States v. Jones,* 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn,* 980 F.3d 1178 (7th Cir. 2020); *United States v. Brooker,* 976 F.3d 228 (2d Cir. 2020).

There is no question that the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine, in their discretion, what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Edwards, is an extraordinary and compelling circumstance.

---

[3] Since the passage of the First Step Act, there have not been enough commissioners to update the Commission's policies or amend the Sentencing Guidelines.

**C. Edwards' Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.**

COVID-19 continues to spread throughout the federal prison system, posing a significant threat to high-risk individuals like Edwards. This threat, coupled with the alarming contagious nature of the virus and the outbreak at the Lompoc Correctional Complex, constitute "extraordinary and compelling" reasons for reducing Edwards' sentence. The reality of the current situation is that if Edwards is infected with COVID-19, it could lead to serious complications or even death.

Edwards is part of the vulnerable population for which COVID-19 is particularly deadly. Edwards suffers from severe obesity, which is among the factors the CDC has identified as placing individuals at higher risk for severe illness from COVID-19. CDC, *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. A person is obese – and thus faces an increased risk for severe illness from COVID-19 – if they have a body mass index of 30 or above. *Id.* As of November 25, 2020, Edwards' body mass index was 47.8, placing him well above the threshold for obesity. Ex. 1. In fact, a person with a body mass index of 40 or above is categorized as severely obese and faces an even higher risk of severe illness from COVID-19. Nicholas S. Hendren, MD, et al., *Association of Body Mass Index and Age with Morbidity and Mortality in Patients Hospitalized with COVID-19,* American Heart Association, https://doi.org/10.1161/CIRCULATIONAHA.120.051936 (Nov. 17, 2020). Studies show that patients with severe obesity have more than double the risk of being put on a ventilator and a 26% higher risk of death compared to normal-weight patients. *Id.*

Patients with higher body mass indexes are also at higher risk for blood clots and kidney dialysis after recovering from COVID-19. *Id.*

Making matters worse, in May 2020, Edwards suffered from a serious respiratory illness, from which he continues to suffer serious medical complications. For example, he experiences shortness of breath after walking merely 20 feet, and he frequently experiences chest pain. Ex. 1, at 1. Edwards is prescribed an albuterol inhaler, which he uses twice a day. This damage to his respiratory system further increases his risk for severe illness from COVID-19.

Judges throughout the country have found that obesity is an underlying medical condition that establishes "extraordinary and compelling" reasons for relief in light of the COVID-19 pandemic. *See., e.g., United States v. Evans,* Crim. No. 3:00-cr-63 (E.D. Va. Dec. 2, 2020); *United States v. Pelichet,* Case No. CR 19-40033 (D.S.D. Nov. 24, 2020); *United States v. White*, Case No. 13-cr-20653-1 (E.D. Mich. May 20, 2020); *United States v. Sarkisyan*, Case No. 15-cr-00234-CRB-15 (N.D. Cal. May 19, 2020); *United States v. Anderson*, Case No. 3:15-cr-30015 (C.D. Ill. May 18, 2020); *United States v. Johnson*, Crim. No. 15-CR-125 (KBJ) (D.D.C. May 16, 2020); *United States v. Young*, Crim. No. 4:16-40036-TSH (D. Mass. May 15, 2020).

For vulnerable individuals like Edwards, there is no place more dangerous right now than a federal prison. The nation's prison system has shown that it is ill-equipped to handle the spread of COVID-19. While the BOP has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the BOP than within the community at large, and the virus continues to spread at an

9

alarming rate. Studies show that the rate of infection amongst prisoners was 5.5 times higher than the general population. *See* Brendan Saloner, PhD, et al., *COVID-19 Cases and Deaths in Federal and State Prisons,* JAMA (July 8, 2020) doi:10.1001/jama.2020.12528. Inmates lack the ability to participate in social distancing measures or take necessary precautions to protect themselves from the spread of the virus.

The COVID-19 crisis at the Lompoc Federal Correctional Complex is particularly dangerous. During the course of the pandemic, more than 1,000 inmates at Lompoc have been infected with the virus, and five inmates have died. After being one of the nation's hotspots for COVID-19 at the beginning of the pandemic, the facility continues to deal with ongoing outbreaks. In December 2020, ten months after the virus first infiltrated the facility, 25 inmates and three staff members tested positive. Dave Minsky, *25 inmates, 3 staff confirmed positive for COVID-19 at Lompoc prison complex,* Santa Maria Times, https://santamariatimes.com/news/local/crime-and-courts/25-inmates-3-staff-confirmed-positive-for-covid-19-at-lompoc-prison-complex/article_e872760d-9086-56b6-8492-277980055b68.html (Dec. 17, 2020). In response to Lompoc's failure to protect inmates from the spread of the virus, U.S. District Court Judge Consuelo Marshall approved a preliminary injunction in July, ordering the BOP to identify and release at-risk inmates. *Id.* After failing to abide by that injunction, in October, Judge Marshall ordered the prison to expedite the process and to release 129 inmates immediately to home confinement. *Id.*

Reports from inmates at Lompoc highlight the failure of the facility to address the pandemic. Inmates said they were not treated for the virus, despite showing symptoms for

days, and that inmates who tested positive were reintroduced into the general population without proper precautions. Tyler Hayden, *Lompoc Prison Inmates and Families Describe 'Cruel' COVID-19 Conditions,* Santa Barbara Independent, (May 6, 2020) https://www.independent.com/2020/05/06/lompoc-prisoninmates-and-families-describe-cruelcovid-19-conditions/. Social distancing remains impossible. Inmates are paying a high price for the prison's failures. As a result of its inability to control the spread of the virus, the prison is operating on a modified lockdown status, denying inmates the ability to communicate or visit with their loved ones.

In July 2020, the Office of the Inspector General (OIG) released a report detailing the multiple ways in which Lompoc contributed to the spread of the virus and ultimately, the death of five inmates. Walter Pavlo, *Office of Inspector General Critical of Bureau of Prisons Response to COVID-19,* Forbes (July 27, 2020), https://www.forbes.com/sites/walterpavlo/2020/07/27/office-of-inspector-general-critical-of-bureau-of-prisons-response-to-covid-19/#13e2056c5d71. The facility was understaffed, short on both medical staff and correctional officers during the crisis. *Id.* This forced employees to go between the multiple facilities within the complex, likely contributing to the increased spread of the virus. *Id.* In addition, the OIG criticized the harsh lockdown, raising concerns about the detrimental effect it had on inmates' mental health. *Id.*

Amid this rapidly unfolding crisis, the universally recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those

11

who need to stay incarcerated. Edwards is exactly the type of individual deserving of compassionate release: He is at risk of severe illness, his release does not pose a danger to the community, and a balancing of the 3553(a) factors warrants the requested relief.

    **D. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Edwards' Sentence to Time Served.**

Under the compassionate release statute, once a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Edwards' compromised physical health and the unique danger he faces of contracting COVID-19 and becoming severely ill, when combined with the other § 3553(a) sentencing factors, warrant relief.

First, continued incarceration is not necessary to protect the community from Edwards. While the underlying offense was serious, it was a non-violent drug crime that did not involve allegations of violence or weapons. Further, Edwards quickly took responsibility for his actions: he pled guilty only four months after his indictment. He has no history of violence and does not pose a threat to the community.

Edwards' institutional record further reflects that he is not a safety risk and that he has utilized his incarceration to prepare for a successful re-entry. After leaving federal prison for the first time, Edwards lacked a stable job and struggled with addiction, which fueled his criminal activity. During his current incarceration, however, Edwards has participated in numerous programs, including educational drug abuse programs. Ex. 3 (Progress Report). Further, in the nearly six years he has been incarcerated, Edwards has

only had a single disciplinary infraction. The Court should consider Edwards' post-sentencing conduct, as it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States,* 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).

Second, the time Edwards has spent incarcerated is sufficient, but not greater than necessary, to comply with the purposes of his original sentence. Edwards has spent 84 months in prison – substantially more time than he has served previously. Factoring in his good conduct time, Edwards has served nearly 50 percent of his total sentence. Further, being incarcerated during this outbreak has "sufficiently increased the severity of the sentence beyond what was originally anticipated." *United States v. Mel,* Crim. No. TDC-18-0571, 2020 WL 2041674, at *6 (D. Md. Apr. 28, 2020). Since mid-March, the BOP has operated in a "modified lockdown" status. This has resulted in the suspension of family and legal visits, limited phone calls and communications with the outside world, increased use of solitary confinement for non-punitive purposes, and elimination of most recreation and programming. This has been Edwards' life for almost a year now, and there is no indication of when the facility will go back to "normal." In light of these harsh conditions, the sentence Edwards has served has been more severe that what was originally contemplated by the Court, and the time he has spent incarcerated is sufficient for deterrence and punishment purposes.

Additionally, the sentencing disparity in Edwards' case weighs in favor of a reduction. Combined with his violation of supervised release, Edwards' total sentence resulted in 238 months incarceration. In comparison, one of his co-defendants, who was

also on supervised release at the time of the indictment, received a total of 120 months. The Government agreed at sentencing that Edwards' 60-month sentence stemming from his violation of supervised release should be run concurrent with his overall sentence. Ex. 4, at 12 (Sentencing Transcript). The Government also requested that Edwards be sentenced to the lower 25th percentile of the applicable Guidelines range. *Id.* Nevertheless, this Court sentenced Edwards to a consecutive sentence, resulting in a total sentence of 238 months – far above his Guidelines range of 168 to 210 months, and far above the Government's recommendation of the lower 25 percent of that range. Edwards' conduct, while serious, did not warrant such a disproportionate sentence.

Finally, should the Court reduce his sentence, Edwards has a re-entry plan that will ensure his and the public's health and safety. If released, Edwards would reside with his parents at their home in Florence, Mississippi. The home has a separate bedroom and bathroom where Edwards could self-quarantine. The conditions at his family's home are much safer for him than a confined prison cell where he is living in close quarters with other individuals, constantly exposed to staff members who are entering and leaving the facility. In addition, once it is safe for him to work, Edwards' parents have secured him a job at Siemens Electric Company, the power plant where they both are employed. Edwards also has three sisters who have secure jobs and are ready to help support his transition home. As recognized by this Court at Edwards' sentencing, his law-abiding parents are extremely supportive and can provide a stable home to guide Edwards' re-entry.

In this case, a reduction of Edwards' sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19 – compounded by the heightened risks faced by Edwards, whose ability to engage in basic self-protective measures is restricted – warrant relief. Because Edwards has been incarcerated for 84 months, which is "sufficient, but not greater than necessary" to satisfy the goals of sentencing under § 3553(a), Edwards seeks an order reducing his sentence to time served.[4]

## CONCLUSION

Edwards has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to reduce his sentence to time served.

---

[4] If the Court does not believe a reduction to time served would be appropriate, the Court can apply a reduction to Edwards' sentence to reflect the increased severity of his sentence.

Respectfully submitted,

_____/s/_____
C. Justin Brown (*admitted pro hac vice*)
Maryland State Bar No. 28110
Brown Law
1 N. Charles St., Suite 1301
Baltimore, MD 21201
Tel: (410) 244-5444
Fax: (410) 934-3208
Email: brown@cjbrownlaw.com

_____/s/_____
Michael L. Scott
MB# 101320
Office of the Federal Public Defender
200 S. Lamar Street, Suite 200-N
Jackson, MS 39201
Tel: (601) 948-4284
Fax: (601) 948-5510
Email: mike_scott@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, a copy of this Motion was served on all parties via CM/ECF.

_____/s/_____
Justin Brown