1               UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF MISSISSIPPI
2                   EASTERN DIVISION

3

4   UNITED STATES OF AMERICA                 PLAINTIFF

5   V.              CRIMINAL ACTION NO: 2:14CR5-KS-MTP

6   RODERICK EDWARDS, JR.              DEFENDANT

7

8           **TRANSCRIPT OF SENTENCING HEARING**

9

10         BEFORE HONORABLE KEITH STARRETT
         UNITED STATES DISTRICT JUDGE

11

12            SEPTEMBER 15, 2014
         HATTIESBURG, MISSISSIPPI

13

14   COURT REPORTER:

15   TERI B. NORTON, RMR, FCRR, RDR
    2012 15TH STREET, SUITE 403
16   GULFPORT, MISSISSIPPI  39501
    (228) 563-1748

17

18   APPEARANCES:

19   REPRESENTING THE GOVERNMENT:

20       JOHN MEYNARDIE, ESQUIRE
      OFFICE OF THE UNITED STATES ATTORNEY
      1575 20TH AVENUE
21       GULFPORT, MISSISSIPPI  39501

22   REPRESENTING THE DEFENDANT:

23       CLARENCE GUTHRIE, ESQUIRE
      THE GUTHRIE FIRM, PLLC
24       350 Arbor Drive, Suite D
      Ridgeland, MS 39157-4810

25

*PK*

*PSR*

1    **THE COURT:**  We have on the calendar this morning

2    first case number 2:14cr5, United States versus Roderick

3    Edwards.  What says the government?

4    **MR. MEYNARDIE:**  The government is ready, Your Honor,

5    and we have the signed agreed preliminary order of forfeiture.

6    **THE COURT:**  All right.  If you will pass that to the

7    clerk, please, if you will accept this for filing, please,

8    ma'am.  What says the defendant in this case?

9    **MR. GUTHRIE:**  Ready, Your Honor.

10   **THE COURT:**  Come forward with your client, please,

11   sir.

12   **MR. GUTHRIE:**  Yes, sir.

13   **THE COURT:**  I understand congratulations are in order

14   for you, Mr. Guthrie.

15   **MR. GUTHRIE:**  Oh, yes, sir.  I guess.

16   **THE COURT:**  Well, I think so.  I think they are in

17   order.  Congratulations.

18   **MR. GUTHRIE:**  Thank you.

19   **THE COURT:**  Are there objections to the presentence

20   report from the government?

21   **MR. MEYNARDIE:**  No, Your Honor.

22   **THE COURT:**  From the defendant?  I know there have

23   been some filed.  Is there anything further you want to say,

24   Mr. Guthrie?

25   **MR. GUTHRIE:**  Your Honor, I want to make sure -- I

1    didn't get a response.  I saw where some people had read it,

2    but the sentencing memorandum that I submitted on Friday

3    morning via e-mail to the Court and to the government and to

4    the probation officer.

5            **THE COURT:**  I read it and have considered it this

6    morning.

7            **MR. GUTHRIE:**  Okay, Your Honor.

8            **THE COURT:**  Is there anything further that the

9    government wants to say in response to the objections, Mr.

10   Meynardie?

11           **MR. MEYNARDIE:**  There isn't, Your Honor, although we

12   are prepared to put a witness on if the Court feels that's

13   necessary.  Some of the objections I don't think make any

14   difference.  And so -- although on the leader/organizer

15   objections, I think it may be worthwhile to put a witness on.

16   The question about whether he was formally a Black Gangster

17   Disciple, I don't think makes any difference.  I think they

18   have conceded, although Cornelius Smith may have said there was

19   90 kilograms, they have conceded the probation officer is

20   correct that it is between 15 and 50, so I don't think we need

21   anything there.  But on the organizer/leader, that's still

22   open.  And I think the issue about his arrest has no bearing

23   either back in --

24           **THE COURT:**  The organizer/leader is an issue that I

25   have, Mr. Meynardie.  I would like to hear some proof on that

1   because the difference between zero, three or four points is

2   significant to this defendant.  If you would call your witness,

3   please.

4          **MR. MEYNARDIE:**  All right.  I call Don Penny, Your

5   Honor.

6          **THE COURT:**  Mr. Penny, if you would come around and

7   be sworn, please.

                            **DON PENNY**

8

9   was thereupon called as a witness, and, having been duly sworn,

10   testified as follows:

                        **DIRECT EXAMINATION**

11

12          **THE COURT:**  Be seated, please, Mr. Penny, and speak

13   into the microphone loudly enough to be heard.  Proceed, Mr.

14   Meynardie.

15   **BY MR. MEYNARDIE:**

16   Q.   Would you state your name, please?

17   A.   Donald Penny, P-E-N-N-Y.

18   Q.   And for whom are you employed?

19   A.   Drug Enforcement Administration.

20   Q.   And how long have you been a DEA agent?

21   A.   A little over 23 years.

22   Q.   Agent Penny, I don't want to go through the entire case

23   just to get to this one point, but let's -- just briefly, this

24   case began how?

25   A.   It began as an investigation into Black Gangster Disciple

1  individuals that were identified as distributing cocaine and

2  crack cocaine in Hattiesburg, Mississippi.

3  Q.  Let me focus you a little bit closer to -- there was a

4  Title III wire tap in Bogalusa.  Is that correct?

5  A.  That's correct.

6  Q.  Who was that on?

7  A.  That was on an individual named Steven Haynes.

8  Q.  All right.  And so agents in the Bogalusa area were

9  listening to Haynes' phone; is that correct?

10  A.  That's correct.

11  Q.  Did they, in fact, intercept Mr. Edwards?

12  A.  Yes, they did.

13  Q.  What did that part of the investigation tell us about what

14  Mr. Edwards was doing here in the Lumberton/Hattiesburg area?

15  A.  They identified Roderick Edwards as the source of supply

16  for Mr. Haynes, and Mr. Haynes was a distributor in the

17  Bogalusa, Louisiana area, with a pretty substantial network

18  underneath him.

19  Q.  In terms of individuals that were involved in this

20  conspiracy, and I don't want you to necessarily tell us all of

21  them, were there more than five, or five or more?

22  A.  Yes, there were.

23  Q.  Can you give us five names, including Mr. Edwards?  He

24  would count as one of the five.

25  A.  Well, Demarco Lewis and Cornelius Smith, and Mr. Haynes,

1  he had mentioned, and his courier, Mr. Bridges, and then there

2  was a number of people here in the Hattiesburg area, Steven

3  Buckley, Jabaris Jordan, Dale Young.

4  Q.  All involved in the distribution of cocaine within this

5  group?

6  A.  That's correct.

7  Q.  All right.  Now, within this group, what was the role that

8  Mr. Edwards played?

9  A.  He was the source of supply.  We have identified an

10  individual above him, but he was a supplier of cocaine to

11  several people in the Hattiesburg community.  He was over two

12  individuals that acted as what we referred to as like a

13  lieutenant, that being Demarco Lewis and Cornelius Smith.

14  Those individuals stored cocaine at separate locations at their

15  separate residences, and they actually distributed cocaine for

16  Mr. Edwards, and the proceeds were collected back and then

17  resupplied the money back to Roderick Edwards, a little bit

18  different than if he was simply supplying them with the drugs

19  and then they went out and operated independent.  They actually

20  stored, moved at his direction and sent proceeds back to

21  Mr. Edwards.

22  Q.  Were there phone calls suggesting that that was what was

23  going on?

24  A.  Yes, there were.

25  Q.  In fact, we had a wire tap for some period of time on

1  Mr. Edwards' phone; is that right?

2  A.  That's right.

3  Q.  And in fact, he was directing Mr. Smith, is that right,

4  Cornelius Smith?

5  A.  That's correct.  There were individuals that would call

6  sometimes and order drugs -- attempt to order drugs to

7  Mr. Edwards, and he would direct them to Cornelius Smith, to

8  get with Cornelius to actually make the transaction.

9  Q.  The same thing is true with Demarco Lewis, you said?

10  A.  That's correct.

11          MR. MEYNARDIE:  I tender the witness, Your Honor.

12          THE COURT:  Cross-examination, Mr. Guthrie?

13          MR. GUTHRIE:  I have no cross-examination, Your

14  Honor.

15          THE COURT:  Thank you, Mr. Penny.  You may stand

16  down.  Do you have any other witnesses, Mr. Meynardie?

17          MR. MEYNARDIE:  No, Your Honor.

18          THE COURT:  Come forward with your client, please,

19  Mr. Guthrie.

20          MR. GUTHRIE:  Your Honor, may I be heard on this

21  specific objection?

22          THE COURT:  Yes, sir.

23          MR. GUTHRIE:  Thank you.  Your Honor, we admit and

24  concede about the government's investigation in this.  I've

25  been presented with discovery and CDs and telephone calls and

1   things like that, and it's not -- and my initial objection to

2   the presentence report said something about five people, and I

3   really was just bringing that to everybody's attention.  The

4   original report simply said -- mentioned about three people,

5   and then my client for a total of four.

6       Now, the guideline 3B1.1 -- let me make sure I have that

7   right, Your Honor -- yes, 3B1.1 -- says that it would require

8   my client to be an organizer or leader of a criminal activity

9   that involved five or more participants or was otherwise

10  extensive.  Well, it's pretty easy in a drug conspiracy to find

11  five or more participants.  We have five codefendants in this

12  case, but really the Court's inquiry has to be what my client,

13  what Roderick Edwards' role in this was.  Again, it's easy to

14  find five participants, but what did he do in relation to that

15  role?

16      And, of course, the addendum to the guideline says what

17  this Court must consider and what the government has to show

18  you by a preponderance of the evidence, and understanding the

19  sentencing burden of proof is by a preponderance of the

20  evidence, the exercise of decision-making authority, the nature

21  of participation in the commission of the offense, the

22  recruitment of accomplices, the claimed right to a larger share

23  of the fruits, the degree of participation in planning or

24  organizing, and the nature and scope of the illegal activity,

25  and the degree of control and authority exercised over others.

1       We have heard, and again concede, that Roderick Edwards

2  was saying when and where a lot in those conversations.  What

3  you haven't heard, Your Honor, is whether he demanded a larger

4  share, all of the things that you think about in a drug

5  conspiracy about determining the hierarchy.

6       Now, the agent simply getting up and saying, well, we

7  think he is a lieutenant or a captain, but he wasn't -- and

8  again, the names aren't important.  The case law says that

9  names like king pin or boss or things like that are not

10 important.

11      What we are simply saying and what we've said twice we are

12 saying again now, is that it is kind of a blurred line between

13 is he a manager or is he an organizer or a leader.  And it's

14 very important when you are talking about levels that we are

15 talking about.  Each level counts.  So is there enough for the

16 language to label him an organizer or a leader for four points

17 or a manager for only three?  Does the Court have enough

18 information to label him in this hierarchy at all?

19      And we submit that although a couple of the things that

20 the Court must consider have been covered, all of them are not.

21 And so by a preponderance of the evidence, we are asking the

22 Court to consider the three -- either zero levels or the three

23 levels as a manager rather than the organizer or leader of this

24 entire operation, Your Honor.  And that's the nature of our

25 objection.

1          **THE COURT:**  Thank you, Mr. Guthrie.  Any response,

2   Mr. Meynardie?

3          **MR. MEYNARDIE:**  Your Honor, I think Mr. Alexis has

4   pretty much hit it on the head with his response.  I don't

5   always know the difference between an organizer/leader and a

6   manager/supervisor.  I think that he was clearly the leader of

7   this organization and was managing people.  I think the four

8   level is probably appropriate.

9          **THE COURT:**  All right.  Thank you.  The Court has

10  heard testimony that is unrebutted regarding the fact that this

11  man was not -- that there was someone higher than him in the

12  organization but that he directed at least two, Mr. Smith and I

13  think Mr. Haynes, who stored and did his bidding and sold

14  illegal drugs.  There is no question but that the requisite

15  number of participants are involved in the organization.  The

16  evidence is sufficient by a preponderance of the evidence

17  standard to establish that this man is a leader and an

18  organizer, and the Court finds that the objection to the

19  presentence report is not well taken and will be overruled.

20         Are there any other objections to the presentence report

21  that need to be addressed?  The others are confessed.  The

22  other objections to the presentence report are confessed.  Any

23  other objections, Mr. Guthrie?

24         **MR. GUTHRIE:**  Well, I have told the Court that the

25  government, at least based on what I've been told, that the

1   government will concur with us that the revocation time, the 60

2   months that the Court ordered on June 19th, be run concurrent

3   with the sentence that is about to be imposed, and I know the

4   Court doesn't want to go on my word alone, but I just want to

5   confirm that I was told that by the government.  We are asking

6   the Court to consider that.  I briefed it in my memorandum,

7   Your Honor, and I ask -- I just make another request that the

8   Court consider that.

9             **THE COURT:**  All right.  Thank you.  You brought that

10  up originally, too, back when the revocation occurred.

11            **MR. GUTHRIE:**  Yes, sir.

12            **THE COURT:**  And I accept your representation.  There

13  is no objection from the government.  All right.  Mr. Alexis?

14            **PROBATION OFFICER:**  May I approach, Your Honor?

15            **THE COURT:**  Yes, Mr. Alexis.

16        **(BENCH CONFERENCE OFF THE RECORD)**

17            **THE COURT:**  Mr. Alexis was correcting the guideline

18  provisions.  There's a typo on the report to me and should be

19  changed from 262 to 263 as the sentencing range.  Correct,

20  Mr. Alexis?

21            **PROBATION OFFICER:**  No, sir, it's not the sentencing

22  range.  It's actually what the recommendation itself was.

23            **THE COURT:**  All right.  Thank you.  The Court finds

24  that the objections to the presentence report, except for the

25  one regarding leader and organizer, are sustained, and the

1   presentence report will be modified as stated.  The presentence

2   report will be -- as to the leader/organizer, the objection is

3   overruled, and the leader or organizer will stand.

4       Other than stated, the Court accepts the presentence

5   report as presented.  The Court finds that there is a guideline

6   range in this case of two -- it's a total offense level of 35,

7   a criminal history category of III, a guideline range of 210 to

8   262 months.  The guidelines provisions recommend supervised

9   release of five years.  Probation is not an issue.  Fine of

10  $20,000 to $10 million, restitution is not applicable in this

11  case, and a special assessment of $100.

12      Both sides recognize that the guidelines are advisory and

13  not mandatory.  Are there any other 3553 factors that the

14  government wishes the Court to consider, Mr. Meynardie?

15      **MR. MEYNARDIE:**  There are, Your Honor, and if we

16  could approach.

17      **(BENCH CONFERENCE OFF THE RECORD)**

18      **THE COURT:**  Any other 3553(a) factors from the

19  government?

20      **MR. MEYNARDIE:**  Your Honor, the government is

21  recommending the lower 25 percent of the applicable sentencing

22  guideline range, and I will state for the record that we did

23  have a conversation about concurrent sentence with the

24  revocation.  There were no promises made, but I did say that I

25  would concur in that, and I do.

1         **THE COURT:**  Thank you, Mr. Meynardie.  Anything other

2  3553(a) factors from the defendant, Mr. Guthrie?

3         **MR. GUTHRIE:**  None of those factors, Your Honor.  We

4  do have a couple of witnesses, and of course my client would

5  like to allocute this morning.

6         **THE COURT:**  Yes, sir, that is fine.  Any other 3553

7  factors?

8         **MR. GUTHRIE:**  No, Your Honor.

9         **THE COURT:**  You want to put your witnesses on first

10  or let the defendant speak?  How would you like to proceed, Mr.

11  Guthrie?

12         **MR. GUTHRIE:**  We would like to call Ms. Edwards, Mary

13  Edwards.

14         **THE COURT:**  All right.  Ms. Edwards, come forward,

15  please.  Be seated, if you would, Mr. Edwards.

16    Ms. Edwards, would you come around and take the witness

17  stand here?  Before you sit down, if you would place your left

18  hand on the Bible, raise your right hand and let the clerk

19  administer the oath.

20    (OATH ADMINISTERED)

21         **THE COURT:**  Be seated, please, Ms. Edwards.  Speak

22  into the microphone loudly enough to be heard.  Proceed,

23  please.

24         **MR. GUTHRIE:**  I wasn't planning on doing this with

25  question and answer, Your Honor.

1       Ms. Edwards, would you please just tell the Court this
2   morning the factors you think are appropriate in determining --
3   for the Court to consider when determining a sentence in this
4   case?
5       **MS. MARY EDWARDS:**  Yes, Your Honor.  My name is Mary
6   Edwards.  I'm asking you, if you have any mercy on my son,
7   please consider it.  I'm a woman of faith, and that's my only
8   son I have in the world.  I will be honest, the world stole
9   him.  The world stole him because of my faith.  We have gone
10  through so much.  Your Honor, if you have any mercy on my son,
11  because, Lord knows, we come -- he come from a good-standing
12  family.  I've always worked.  I have always respected the law.
13  I have always feared the law.  And I taught my son, because I
14  go back to the Bible where it says, "Train up a child in the
15  way he should go, and when he grow old, he will not depart."
16  And I believe that strongly, but when the world go after you,
17  when the world comes after you, when the world tries to break
18  you down with your faith -- and he didn't understand, but I'm
19  being honest with you, Your Honor.
20      When he went to -- we didn't know anything about this in
21  2009.  I tried my best to tell my son the world had him.  The
22  world made it look like -- the world made it seem like, the
23  world made him think that he was -- 2009, when he came up in
24  this courtroom -- 2010, when he came in this courtroom, I
25  prayed and I begged and I begged the Lord -- you did, you heard

1   the Lord, but I don't care how much I prayed, I don't care how

2   much I begged, he had to see the Lord.

3        I'm telling you, Your Honor, when they got him January

4   this year, from January to September, he had to find the Lord.

5   He had to see the Lord.  Now he know exactly what I'm talking

6   about.  The first time they kept moving, the world still had

7   him.  He come to Hattiesburg, he left Hattiesburg, went to

8   Wiggins, he left Wiggins, he went to Texas -- he never stopped.

9   These nine months he stopped.  He had to hear the Lord.  The

10  Lord had to speak to him.

11       I'm a woman of faith.  I taught my children.  I took my

12  son -- that's my only son that they got.  If you have any kind

13  of mercy, please -- I know I couldn't say that in 2010.  I

14  didn't get up here in 2010 because I knew he had to meet the

15  Lord.  He met the Lord.  I can say honest, from the bottom of

16  my heart, I come up here and I don't speak.  My words is very

17  important, and I don't speak unless I know.  My son now, he

18  know for himself.  He is 31 years old.

19       Your Honor, I taught my children.  Like I said, I done

20  everything.  I worked, I trained my children, but when the

21  world gets ahold to you, when the world makes it seem like --

22  when the world -- and I asked the Lord, I said, Lord, please,

23  whatever you do, because I know how my father feels now when he

24  gave his only begotten son.  That's my only son that I got.  I

25  never had the opportunity -- 15 minutes on that phone that me

1    and my son have connected, and Lord knows my heart.  He been on

2    my heart, and I knew one day God was going to give him back to

3    me.  And I'm just asking you, please, if you have it anywhere

4    in your heart, please don't throw my son away.  The world done

5    had him.  Just let me get him before I leave here.  I thank

6    you, Your Honor.

7         **THE COURT:**  Thank you, Ms. Edwards.  I respect the

8    fact that you understood and have an appreciation of the fact

9    that he was given a significant break back in 2010, when he was

10   sentenced the first time.  You do recognize that, don't you?

11        **MS. MARY EDWARDS:**  Yes, I recognize that.

12        **THE COURT:**  All right.  Anything further, Mr.

13   Guthrie?

14        **MR. GUTHRIE:**  We would like to call Roderick Edwards,

15   Sr.

16        **THE COURT:**  All right.  Ms. Edwards, you may stand

17   down.  Mr. Edwards, come around and be sworn, please.  Before

18   you sit down, place your left hand on the Bible, raise your

19   right hand, and let the clerk administer the oath.

20        (OATH ADMINISTERED)

21        **THE COURT:**  Be seated, please, Mr. Edwards, and speak

22   into the microphone loudly enough to be heard.  Proceed,

23   please.

24        **MR. RODERICK EDWARDS, SR.:**  Your Honor, I come before

25   you this morning, and first of all, I want to thank you for

1   giving me the opportunity to speak.  And I'm speaking on the

2   behalf of my son, and not only my son but myself.  I'm 55 years

3   old, been working all my life, never been -- never been given

4   nothing.  Everything I've got, I earned it.  But I'm coming

5   before you.  I realize the break that you gave my son back in

6   2009 and 2010, and I greatly appreciated that.

7       One thing that I have learned here in the last several

8   months, that talking to my son for the 15 minutes, that he

9   uphold what he done.  He know what he done is wrong.  And I

10  don't condone no wrongness from him or any of my other kids.

11  But like my wife said, I come before you this day to ask you to

12  please have mercy, have mercy on him.

13      I'm 55 years old, never had any dealings whatsoever with

14  the law.  And my son, just talking with him, he know that what

15  he did is wrong.  And he stands behind that since we have been

16  talking in these last several months.  He's a changed person.

17  I know he is.  And with the mercy of you and with the help of

18  the Lord, I know without a shadow of a doubt, Your Honor, he

19  will not face you again because he have been changed.  What he

20  done and the people that he's been around, I can assure that he

21  has been convicted and he has been changed.

22      All I want to do is just say to the Court that I'm sorry

23  for being here for two consecutive times.  And I assure you,

24  with the help of the Lord and his faith, we won't face you

25  again, Your Honor, and I appreciate that.  I appreciate your

1  time.

2         **THE COURT:**  Thank you, Mr. Edwards.  Mr. Guthrie?

3         **MR. GUTHRIE:**  Your Honor, Roderick would like to say

4  a few words, and then I would like to wrap it up.

5         **THE COURT:**  All right.  Proceed, Mr. Edwards.

6         **THE DEFENDANT:**  Yes.  I would like to apologize to

7  the Court, to my family, and to all those who I've hurt in my

8  involvement in this crime.  I wasn't brought up in this kind of

9  lifestyle, and I deeply regret the pain I have caused my mother

10  and my father.

11         I know I stood here before you once, and I took my

12  medicine.  I served that sentence and got out and did good for

13  awhile, Your Honor, but I got laid off from my job offshore,

14  and my foolishness allowed myself to get back into something I

15  knew was wrong.  I realize that that's not an excuse, but that

16  is what happened.  I was weak and stupid.  I was weak, and I

17  was stupid.  And if I could only go back and do it differently,

18  I would.

19         All I can say is I have learned my lesson.  I have learned

20  my lesson, Your Honor, and I pray for the strength to get

21  through this and prove to them and to this Court that this will

22  never happen again.

23         I know what I got to do, and with the help of the Lord, I

24  will.  Any mercy showed to me would not be wasted, Your Honor.

25         **THE COURT:**  Thank you, Mr. Edwards.  Mr. Guthrie,

1   anything further?

2   **MR. GUTHRIE:**  Yes, Your Honor.  I want to -- I want

3   to get a little bit personal with me, Your Honor.  When I first

4   started practicing law 15 years ago, and I remember I got up

5   and I was defending somebody, and I told -- I told the Court, I

6   said, this is my first criminal case, and blah, blah, blah, and

7   please excuse blah, blah, blah.  I said something like that.

8   Well, my boss took me back after it was over, and he said, That

9   was the dumbest thing you've ever said.  Don't say that this is

10  your first criminal case.  That's nobody's business, and you

11  probably caused a lot of anxiety when you said that.

12  Well, let me say this today.  This is my last criminal

13  case.  This is my last one.  I'm going to do something else.

14  And I've had a lot.  I've had a lot in 15 years.  And this is

15  one of the cases -- there's only been maybe a half dozen in the

16  15 years that's caused me -- caused my heart to ache, and it's

17  caused me discomfort.  Otherwise, it's just been a profession.

18  I've certainly gotten involved in my cases, but this is one of

19  the ones that's caused me to ache because I've spent more time

20  with Roderick's parents than I have with him.  I mean, that's

21  the nature of the business.  You spend -- I mean, Roderick, my

22  client, has been down here, and I've spent more time with his

23  parents, and I have witnessed their hearts ache on behalf of

24  their son.

25  And as I grew up with my parents, and now as I'm raising

1   kids, the bonds there are just -- are just extremely tight.  So
2   I see the pain that they are going through with this.  And I
3   see the pain -- and I'm telling you this, Your Honor, I see the
4   pain that Roderick is going through because of the
5   disappointment that he's caused his parents.

6       I have also witnessed a change in him in the past months
7   that I've been involved.  And I told them at the beginning of
8   this case that this was going to be an extremely uphill battle
9   because of this being the subsequent -- not state offense but
10  subsequent federal offense in front of this same Court, and
11  obviously, that was going to be a huge obstacle to overcome.

12      I will say that I told them, the whole family, that you
13  have made decisions to this point that are affecting you, but
14  all you can do from this day forward in February of 2014 is
15  make good decisions from here forward.  And they have, Your
16  Honor.  We've done everything that we can to set this case up
17  legally, put it in the best position that it can be.

18      This is on Roderick, and he understands that, and he
19  understands that what he has to do from here forward, and
20  everything that's been said in this courtroom this morning is
21  sincere.  There's no doubt that he's accepting responsibility
22  for this, and we certainly need those acceptance of
23  responsibility points, but I really think that we've sincerely
24  earned them.

25      There's other points that we've talked about in this, but

1    I can simply say that my client is ready to proceed forward

2    with this from this day forward and live his life the way it

3    needs to be lived based on what he's done and from this day

4    forward.

5        Just a few administrative things.  The presentence report

6    contains my client's drug history.  We certainly want to take

7    advantage of any drug programs that the BOP has available.  We

8    ask the Court's recommendation in that.  And then there's -- as

9    far as where he is going to be housed, there are some other

10   parts of the presentence report that are probably going to

11   dictate that, but we ask, because of the family ties here, that

12   he be housed as close as possible to his parents, Your Honor.

13       With that, we just ask that the Court consider the 3553

14   factors and give a sentence that is not greater than necessary

15   to accomplish the goals in 3553, Your Honor.

16       **THE COURT:**  All right.  Thank you, Mr. Guthrie.

17   Having considered the advisory guideline calculations along

18   with other sentencing factors found in 3553(a), it is the

19   judgment of the Court that Roderick Edwards is hereby committed

20   to the custody of the Bureau of Prisons for a term of 223

21   months as to Count 1 of the indictment.  Said term of

22   imprisonment is to be served consecutively to the supervised

23   release revocation imprisonment term.

24       Let me -- there was a conference held at the bench

25   regarding the waiver of the guideline amendments.  If you want

1    me to take that into consideration, then we need to go ahead
2    and make a record on that before I go forward any more.  It has
3    been announced by the parties and the record needs to reflect
4    that there are pending and approved retroactive guideline
5    amendments as to the quantity scale which would reduce the
6    total offense level in this case by two points.  Is that
7    correct, Mr. Meynardie?

8            **MR. MEYNARDIE:**  That's correct, Your Honor.

9            **THE COURT:**  But -- and the Court is willing, at the
10   request of the parties, to do this now if the defendant will
11   waive any right to proceed with that once the guideline
12   amendments become effective, which would be after December --
13   November 1st of 2015.  Now, what kind of record do you want to
14   make on this, Mr. Meynardie?

15           **MR. MEYNARDIE:**  I think as long as the defendant
16   acknowledges that he is getting the benefit of that now and is
17   not entitled to it again later, that would be sufficient.

18           **THE COURT:**  All right.  Mr. Guthrie, is that what
19   your client wishes to do?

20           **MR. GUTHRIE:**  Yes, Your Honor.  We brought that up in
21   the sentencing memorandum.  As to that specific objection,
22   obviously if they change it between now and 2015 and make it
23   three levels or four levels, then that is something different.
24   But as to the two levels, we certainly waive any subsequent
25   motions that would be made on that.  We understand that the

1   guidelines coming into effect will adjust the quantity table --

2          **THE COURT:**  Either he's waiving it or he's not.

3          **MR. GUTHRIE:**  He is waiving it for the two levels.

4          **THE COURT:**  He's waiving it forever or he's not.  I'm

5   willing to accept that and do it now if he waives his right to

6   ever come back before this Court for any further reduction.  If

7   he doesn't do that, then I'm not willing to accept it.  If he

8   waives it, he takes his chances with the two levels and we go

9   on, or he doesn't waive it at all.  You need to talk to him

10  about it and make sure he understands.  What you brought up

11  about if they reduce it more, well, nobody can predict the

12  future.  And the other flip side of it is that Congress may

13  object to it between now and November 1st, and it may not

14  become -- there may not be any reduction at all.  So either you

15  waive it or you don't.  There needs to be a decision now one

16  way or the other.

17         **MR. GUTHRIE:**  Yes, sir.  May we talk with --

18         **THE COURT:**  You may talk with your client, yes.

19         **MR. GUTHRIE:**  Thank you.

20      **(MR. GUTHRIE CONFERS WITH DEFENDANT.)**

21      **(BENCH CONFERENCE OFF THE RECORD)**

22         **MR. GUTHRIE:**  Your Honor, I have discussed the waiver

23  pertaining to the guidelines concerning the quantities, and my

24  client does wish to waive now and forever any further

25  calculations as to that particular guideline that is ostensibly

1    being changed by the Sentencing Commission, Your Honor.

2          **THE COURT:**  Do you understand that, Mr. Edwards, that

3    you are asking, or your attorney is asking to take advantage of

4    a possible and probable two-level reduction in your total

5    offense level?  You are asking that the Court give you credit

6    for that now, and that you are forever waiving any right that

7    you would have to come back and request any additional

8    reduction because of a guideline reduction by the Sentencing

9    Commission.  Do you understand what I'm saying?

10         **THE DEFENDANT:**  Yes, sir.

11         **THE COURT:**  Okay.  Once you -- I'm going to give you

12   the benefit of these two points today, but you can't come back

13   and ask for it again or for any other reduction regarding the

14   quantity, drug quantity table.  Do you understand that?

15         **THE DEFENDANT:**  Yes, sir.

16         **THE COURT:**  Anything further the government wishes to

17   put on the record?

18         **MR. MEYNARDIE:**  No, Your Honor.  I think I said the

19   lower 25 percent recommendation.

20         **THE COURT:**  Yes, you did.  Let me go back and

21   restate.  The guideline provisions would be reduced to -- it

22   would be a total offense level of 32.

23         **PROBATION OFFICER:**  33, Your Honor.

24         **THE COURT:**  I'm sorry, 33.  Thank you, Mr. Alexis.

25   And a criminal history category of III.  The guideline range

1    would be 168 to 210.  And all the other provisions would remain

2    the same.

3           **PROBATION OFFICER:**  Your Honor, the fine range would

4    change.

5           **THE COURT:**  What is the fine range?

6           **PROBATION OFFICER:**  The lower end of the fine range

7    would be $17,500.

8           **THE COURT:**  Everything else would be the same?

9           **PROBATION OFFICER:**  And the other fine range would be

10   still $10 million.

11          **THE COURT:**  The fine range would be changed from

12   $17,500 to $10 million.  Anything further either side wants to

13   put on the record regarding this waiver?

14          **MR. MEYNARDIE:**  No, Your Honor.

15          **MR. GUTHRIE:**  No, Your Honor.

16          **THE COURT:**  Let's go back.  Having considered the

17   advisory guideline calculations, along with other sentencing

18   factors found at 18 U.S.C., Section 3553(a), it is the judgment

19   of the Court that the defendant, Roderick Edwards, is hereby

20   committed to the custody of the Bureau of Prisons for a term of

21   203 months as to Count 1 of the indictment.  Said term of

22   imprisonment is to be served consecutively to the supervised

23   release revocation imprisonment term that the defendant is

24   currently serving in document number 2:09cr22-KS-MTP-001.

25          Based on the minimum and maximum of the guideline

1    sentencing range exceeding 24 months, as dictated by 18 U.S.C.

2    3553(c)(1), the Court is required to state in open court the

3    reasons for imposing the sentence as to this particular point

4    in the range.   The Court has considered this defendant's

5    history, has considered the gravity of this offense, the fact

6    that he was on supervision, the fact that this was not a low

7    level offense, that he was a leader and organizer, that he was

8    given the advantage of a reduced sentence and other grace and

9    mercy several years ago when he was originally sentenced.   The

10   Court finds that the sentence is appropriate in this case and

11   that the 203 months is the appropriate sentence.

12        The Court is also imposing the sentence in the -- I'm

13   sorry.   I'm going to go back and follow the government's

14   recommendation.   I'm going to restate the sentence.   It's going

15   to be 178 months, giving him the benefit of the lower

16   25 percent recommendation, 178 months.   The calculations have

17   gotten kind of muddled up here, but I'm going to restate that

18   as 178 months, to be served consecutively with the revocation

19   in 2:09cr22.

20        It is further ordered that the defendant shall pay a fine

21   in the amount of $17,500.   The payment of the fine shall begin

22   while the defendant is incarcerated.   Upon release from

23   custody, any unpaid balance shall be paid at a rate of at least

24   $175 per month, beginning 30 days after release from

25   confinement.   Said fine is a departure from the applicable

1  guideline range and is based upon the defendant's ability to
2  pay.  Yes, sir?
3          **PROBATION OFFICER:**  Your Honor, it's not a departure.
4          **THE COURT:**  I'm sorry.  Thank you.  There's no
5  interest on the fine, based on the defendant's ability to pay.
6  Upon release from imprisonment, the defendant shall be placed
7  on supervision for a term of seven years, which is also a
8  departure from the guideline range, because the Court feels
9  that this man needs an extended period of supervision.  If he
10 is appropriately conducting himself, that period may be
11 shortened in due course.
12      Within 72 hours of release from the custody of the Bureau
13 of Prisons, the defendant shall report to the probation office
14 in the district to which he is released.  While on supervised
15 release, the defendant shall comply with the mandatory and
16 standard conditions which are listed on the judgment and
17 commitment order and shall not possess a firearm.
18      In addition, the following special conditions are imposed:
19 First, the defendant shall provide the probation office with
20 access to any requested financial information.
21      Secondly, the defendant shall not incur any new credit
22 charges or open any additional lines of credit without the
23 approval of the probation office, unless the defendant is in
24 compliance with the installment payment schedule.
25      Three, the defendant shall participate in a program of

1  testing and/or treatment for alcohol or drug abuse as directed

2  by the probation office.  If enrolled in an alcohol or drug

3  treatment program, the defendant shall abstain from consuming

4  alcoholic beverages during the treatment and shall continue

5  abstaining for the remaining period of supervision.  The

6  defendant shall contribute to the cost of the treatment in

7  accordance with the probation service co-payment policy.

8      Fourth, the defendant shall not possess, ingest or

9  otherwise use a synthetic cannabinoid.

10     Five, the defendant shall not possess, ingest or otherwise

11 use a synthetic narcotic unless prescribed by a licensed

12 medical practitioner.

13     Six, the defendant shall submit his person, property,

14 house, residence, vehicle, papers or office to a search

15 conducted by a United States Probation Officer.  Failure to

16 submit to a search may be grounds for revocation of release.

17 The defendant shall warn any other occupants that the premises

18 may be subject to searches pursuant to this condition.  An

19 officer may conduct a search pursuant to this condition only

20 when reasonable suspicion exists that the defendant has

21 violated a condition of his supervision and that the areas to

22 be searched contain evidence of this violation.  Any search

23 must be conducted at a reasonable time and in a reasonable

24 manner.

25     Seven, the defendant shall abstain from the use of alcohol

1  or illegal drugs.

2      Eight, the defendant shall not use any mood-altering

3  substances, including prescribed medication, without permission

4  from the probation officer.

5      Nine, the defendant shall participate in and complete any

6  reentry or similar program operated by the court in the

7  district to which the defendant is released at the discretion

8  of the probation officer.

9      It is further ordered that the defendant pay a special

10  assessment of $100 which is due immediately.  The Court

11  recommends designation to an institution closest to the

12  defendant's home for which he is eligible and that the

13  defendant participate in the Bureau of Prisons 500-hour drug

14  treatment program if he is eligible.  The defendant is remanded

15  to the custody of the Marshals Service to await designation to

16  the Bureau of Prisons.

17      Any questions about the sentence from the government, Mr.

18  Meynardie?

19      **MR. MEYNARDIE:**  No, Your Honor.  We do move to

20  dismiss the remaining counts.

21      **THE COURT:**  That order will be entered dismissing the

22  remaining counts.  Any questions, Mr. Guthrie?

23      **MR. GUTHRIE:**  No, Your Honor.

24      **THE COURT:**  Mr. Edwards, I just am at a real loss for

25  words to say.  I looked at you back in 2010, that is four years

1   ago, and I looked at you as a young man with a great deal of

2   promise. The reason I gave you the break, which was a

3   significant variance as to your recommended sentence, because I

4   said, this young man has got an intact family that loves him

5   and has reared him properly and taught him, and you had an

6   opportunity for further educational attainment. I said that in

7   the sentencing order, that you -- you know, you may have said

8   it, that you wanted to go to college or finish college and all

9   these things. And I looked at you and said, this man deserves

10  a break, and I believe he is worthy of it. And I did. I did

11  my job, but I also took a chance on you.

12      And you got out, and just as soon as you got out, or

13  shortly thereafter, you were back dealing drugs, and not just

14  dealing drugs but dealing them at a larger level. You were an

15  organizer and a leader, and what's even worse, you corrupted

16  other people. I know personally about some of these other

17  people that were working for you, and that they were -- they

18  had certainly had the potential that you had for good, but they

19  were corrupted by you. They were organized and recruited and

20  put in the business, back in the business of distributing

21  drugs.

22      You had advantages, and it breaks my heart for your

23  parents, not for you, because you are getting certainly the

24  sentence you deserve, but it breaks my heart for your parents.

25  I have seen thousands, thousands of parents before me, Please

1   don't take my son away, please don't take my daughter away, he

2   got corrupted by the world.  I think your mother used the term

3   very eloquently, you were stolen by the world.  And I

4   understand what she's talking about.  She's talking about the

5   world, the evil that exists in the world, that's always existed

6   in the world since the fall, original fall of man, and that you

7   bought that evil hook, line and sinker.

8        I hope and pray, Mr. Edwards, that your mother and your

9   father are reading you right and your lawyer is reading you

10  right.  He has very passionately -- all three of them have

11  spoken very passionately spoken on your behalf that you are a

12  changed man.  Only you know that.  Only you know that.  But I

13  hope and pray that you will take this time, that you will make

14  the most of it, finish college, do the things that you can do

15  for yourself, and do all you can to make up to your mom and dad

16  the disappointment that you have been by getting into this

17  trouble, because it breaks the heart of a parent and it breaks

18  the heart of a judge to have to send somebody away for

19  something like this.  Anything further from either side?

20             **MR. MEYNARDIE:**  No, Your Honor.

21             **THE COURT:**  This case is concluded.

22                   (HEARING CONCLUDED)

23

24

25

1

2

3                       CERTIFICATE OF COURT REPORTER

4

5          I, Teri B. Norton, RMR, FCRR, RDR, Official Court

6     Reporter for the United States District Court for the Southern

7     District of Mississippi, appointed pursuant to the provisions

8     of Title 28, United States Code, Section 753, do hereby certify

9     that the foregoing is a correct transcript of the proceedings

10    reported by me using the stenotype reporting method in

11    conjunction with computer-aided transcription, and that same is

12    a true and correct transcript to the best of my ability and

13    understanding.

14         I further certify that the transcript fees and format

15    comply with those prescribed by the Court and the Judicial

16    Conference of the United States.

17

18

19

20              s/ Teri B. Norton
                TERI B. NORTON, RMR, FCRR, RDR
21              OFFICIAL COURT REPORTER

22

23

24

25