IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

V.   CRIMINAL NO. 2:14-cr-5-KS-MTP

RODERICK EDWARDS

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**
**FOR COMPASSIONATE RELEASE**

Defendant Roderick Edwards has filed a motion asking this Court for compassionate release pursuant to Title 18 U.S.C. § 3582(c)(1)(A)(i) relying on the threat posed by the COVID-19 pandemic. ECF # 160. The United States respectfully opposes the motion. The Court should deny the motion with prejudice because Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute. Should the Court grant the Defendant's motion, the Government is requesting a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

**Factual Background**

On June 5, 2014, Defendant was convicted of one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846. The Court sentenced him to serve 178 months in prison. ECF # 134. He now moves pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release, relying on the threat posed by the COVID-19 pandemic. ECF # 160.

**I.   BOP's Response to the COVID-19 Pandemic**

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19,

2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp. Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id*. at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

Beginning April 1, 2020, BOP implemented Phase Five of the Action Plan, which currently governs operations. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, such as Philadelphia, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (*e.g.*, medical or mental health care, religious, *etc*.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended until further notice, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney

General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. *See* Exhibit A (Mem. for Director of Bureau of Prisons). As of this filing, BOP has 7,565 inmates on home confinement. Federal Bureau of Prisons, *COVID-19 Home Confinement Information*, *at* https://www.bop.gov/coronavirus/.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial

manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

## II. Defendant's Conviction and Request for Compassionate Release

The Defendant is serving a 178-month sentence. He is scheduled to be released on February 28, 2031. On February 24, 2021, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the threat of COVID-19. ECF # 160. The Defendant, however, has not shown that his conditions, while properly treated, would qualify as extraordinary or compelling. *See* Exhibit B. He also has not shown evidence that he would be safer if released. The absence of a clear plan to avoid the risk of COVID-19 upon release is highly relevant and this Defendant has not shown that he is more likely to contract COVID-19 in prison than outside of prison.

At the time of this filing, there are 0 inmates with confirmed cases of COVID-19, out of a total of 863 inmates, at the FPI Lompoc facility where the Defendant is housed. Federal Bureau of Prisons, *COVID-19 Information*, *at* https://www.bop.gov/coronavirus/. There are 634 inmates who have recovered from the virus and 3 inmates have died. *Id*.

**Legal Framework**

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain limited circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his

sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. *Id*. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." *Id*. § 1B1.13, cmt. n.1(D).

## Argument

This Court should deny Defendant's motion for a reduction in his sentence with prejudice on either of two independently sufficient grounds. First, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, Defendant has not met his burden to show that a reduction is warranted in light of the danger that Defendant would pose to the community and the relevant § 3553(a) factors.

**I.     The Court Should Deny the Motion on the Merits Because Although Defendant Has Established that his Medical Condition Satisfies a CDC Risk Factor, Other Considerations Weigh Heavily Against Release.**

Even if this Court had authority to grant Defendant's motion for a reduction of his sentence, it should be denied for two reasons. First, Defendant has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement. Second, Defendant poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release.

**A.     Although Defendant Suffers from a Qualifying COVID-19 Risk Factor, Other Factors Weigh Strongly Against His Release.**

As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; *see also Eberhart*, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by

§ 3582(c)(1)(A).").[2] To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to the Court's analysis of a motion under § 3582(c)(1)(A), but rather that the motion is evaluated under the CDC medical risk factors affecting the likelihood of severe outcomes with COVID-19.[3] The CDC divides the risk factors into two categories. First, the CDC presents a list of conditions that, according to current data, definitively entail a greater risk of severe illness. The government acknowledges that, during the current COVID-19 pandemic, an inmate who presents one of the risk factors on that list, as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would

---

[2] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

not allow compassionate release. Such a chronic medical condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.[4] As of July 17, 2020, the CDC included the following conditions as placing a person at an increased risk of severe illness from COVID-19: Cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 or higher); serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; and Type 2 diabetes mellitus.[5]

In addition to listing certain conditions that place people at increased risk of severe illness from COVID-19, the CDC guidance currently presents a second list of conditions that "might" increase the risk of severe illness.[6] In an update posted on July 27, 2020, the CDC advised with regard to conditions on the second list: "COVID-19 is a new disease. Currently there are limited data and information about the impact of underlying medical conditions and whether they

---

[4] The government notes that some district courts have disagreed with this position. *See, e.g.*, *United States v. Mondragon*, No. 4:18-CR-132(5), 2020 WL 3868988, at *3-5 (E.D. Tex. July 8, 2020); *United States v. Frost*, No. 3:18-CR-30132-RAL, 2020 WL 3869294, at *3-5 (D.S.D. July 9, 2020).

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] Conditions that might be at increased risk are: Asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant; immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; thalassemia (a type of blood disorder); and Type 1 diabetes mellitus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

increase the risk for severe illness from COVID-19."[7] Given the lack of data and certainty regarding this second group of conditions, an inmate with one or more of these conditions does not present an "extraordinary and compelling reason" under the compassionate release statute and U.S.S.G. § 1B1.13.

A defendant has the burden of establishing "extraordinary and compelling" circumstances, *e.g.*, *United States v. Washington*, No. CR 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020) (Morgan, J.), which, for COVID-19 purposes, means demonstrating that the has a medical condition that definitively entails a greater risk of severe illness under the CDC risk factors and that he is not expected to recover from that condition. Defendant has not satisfied his burden here.

Defendant is 37 years old. Defendant has provided medical records indicating that he suffers from health issues that he argues make him more vulnerable to becoming seriously ill should he contract COVID-19, including obesity (BMI of 47.8) and a serious respiratory illness. ECF #160. Defendant's medical records indicate that he is receiving appropriate healthcare for his ailments. *See* Exhibit B. In particular, he has not addressed why BOP cannot manage his medical condition appropriately, given its significant measures aimed at inmate safety. *See United States v. Mazur*, No. CR 18-68, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated and whether granting the defendant compassionate release would have far-reaching implications, i.e. whether a large number of incarcerated defendants could be granted early

---

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

release on the same grounds . . . Notably absent from Mazur's motion is any assertion that the BOP is not providing him with adequate care.").

Currently, the CDC advises that adults with obesity (a BMI in excess of 30) are at an increased risk of severe illness if COVID-19 is contracted, and further has identified hypertension as a condition that "may increase risk." As such, the government acknowledges that Defendant presents a risk factor identified by the CDC as heightening the risk of severe injury or death were the inmate to contract COVID-19. Although these conditions are manageable conditions, it is unclear whether these conditions, alone or coupled together, provide "extraordinary and compelling reasons" to modify a defendant's sentence pursuant to Section 3582. *See*, *e.g.*, *United States v. Wilfred*, Crim. No. 07-351, 2020 WL 4365531, at *4-*5 (E.D. La. Jul. 30, 2020) (noting that, though obesity is an underlying medical condition that poses increased risk for severe illness from COVID-19, courts have found that obesity—alone or paired with hypertension—does not provide adequate grounds for compassionate release) (collecting cases); *but see United States v. Woods*, No. 1:17-CR-118-LG-JCG-2, 2020 WL 3452984, at *3 (S.D. Miss. Jun. 24, 2020) (finding that preexisting medical conditions of severe obesity and hypertension in conjunction with the threat posed by COVID-19 at the defendant's facility weighed in favor of the defendant's release).

Defendant's concerns regarding COVID-19, even given the number of cases at FCI Lompoc, also do not warrant a reduction of his sentence. As previously discussed, BOP is undertaking measures to curb the spread of COVID-19 and to limit the risk of inmates contracting it. Furthermore, as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed

release plans and whether a known outbreak has occurred at his or her institution. Defendant has not established that he is more likely to contract COVID-19 while incarcerated than he would out in the community of Florence, where there is also a high incidence of infection. Even if this Court concludes that Defendant has established "extraordinary and compelling reasons" for a sentence reduction based on the risk of contracting COVID-19, Defendant has not established that he would be less vulnerable to COVID-19 if he were released.

Moreover, the factors militating against a sentence reduction outweigh Defendant's asserted medical concerns related to COVID-19, as discussed below. *See United States v. Pawlowski*, No. 20-2033, ___ F. 3d ___, 2020 WL 4281503, at *2 (3d Cir. June 26, 2020) ("The Government does not dispute for purposes of this appeal that Pawlowski's health conditions, and the risks they present in light of the COVID-19 outbreak, constitute 'extraordinary and compelling reasons' that may allow a court to grant compassionate release. But it maintains that the District Court acted within its discretion in denying Pawlowski compassionate release based on its weighing of the applicable § 3553(a) factors. For the reasons set out below, we cannot disagree.").

Accordingly, in light of Defendant's record and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

      **B.     Section 3553(a) Factors Militate Against Sentence Modification.**

If this Court were to find that Defendant's medical conditions provide extraordinary and compelling reasons to justify a sentence reduction under Section 3582, this Court should nevertheless deny Defendant's Motion in light of the factors set forth in Section 3553(a).

In this case, the Section 3553(a) factors counsel in favor of requiring Defendant to serve the balance of his sentence. First, as this Court recognized at sentencing, the nature of

Defendant's offense was serious, finding Defendant responsible for distributing between 15 and 50 kilograms of cocaine hydrochloride. [Presentence Investigation Report ("PSR"), ¶ 77.] Defendant's participation was essential to the conspiracy as he was the leader over two individuals who he directed to store drugs and distribute them. *Id*. Moreover, Defendant's conduct was not aberrant, as he was part of a drug conspiracy that began in 2009 and continued through 2014. [PSR, ¶ 1.]

Defendant has been incarcerated since February 10, 2014, and therefore has been incarcerated for approximately 84 of the 178 months to which he was sentenced. He has therefore served less than 50% of his sentence. The length of Defendant's remaining sentence, also militates against granting Defendant compassionate release. *See United States v. Connell*, No. 18-cr-00281-RS-1, — F. Supp. 3d —, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis."); *United States v. Pawlowski*, Crim. Action No. 17-390-1, 2020 WL 2526523, at *7 n.11 (E.D. Pa. May 18, 2020) ("The amount of the sentence a defendant has served, and the amount that remains to be served, are relevant to a court's consideration of the § 3553(a) factors."). Releasing Defendant now, with more than 50% of his sentence outstanding, would neither serve to promote respect for the law nor deter future conduct. *See*, *e.g.*, *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming district court's denial of Section 3582 motion noting that "'releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense' [and] that requiring '[the defendant] to serve the remainder of his sentence would provide just punishment for the offense and afford adequate deterrence to criminal conduct.'" (internal quotation omitted)); *United States v. Davies*, 17-CR-57 (ERK), 2020 WL 2307650, *2 (E.D.N.Y. May 8,

2020) (finding that granting the defendant compassionate release would not "promot[e] respect for the law and its deterrent effect, it would undermine it"); *see also Rodriguez-Aguirre v. Hudgins*, 739 F. App'x 489, 491 (10th Cir. 2018) (affirming the denial of compassionate release motion based on the "seriousness of defendant's offense"); *United States v. Kincaid*, Case No. 06-30073, 2020 WL 1874113, *4 (C.D. Ill. Apr. 15, 2020) (denying compassionate release for reasons including "the seriousness of the offense and the amount of time over which [the defendant's] crimes occurred").

Lastly, as set forth in Defendant's PSR, Defendant's advisory guideline range was 210-262 months' imprisonment based on a total offense level of 35. [PSR, ¶ 127.] In considering Section 3553(a), and upon varying downward, the Court sentenced Defendant to 178 months' imprisonment. Nevertheless, as calculated pursuant to the sentencing guidelines, the advisory sentencing range counsels against reducing Defendant's sentence. *See United States v. Gordon*, — F. Supp. 3d —, 2020 WL 4696596, *4 (E.D. Mich. Aug. 17, 2020) ("Defendant's advisory guideline range was 360 months to life imprisonment. The court ultimately imposed a sentence at the bottom of the guideline range of 360 months imprisonment. A reduction in sentence to time served a mere two years later is patently inadequate." (internal citations omitted)) (citing 18 U.S.C. § 3553(a)(4)); *United States v. Heredia*, Case No. 17-cr-00042-MMC-2, 2020 WL 3971617, *2 (N.D. Cal. Jul. 14, 2020) ("An order releasing [the defendant] at this time would result in a term of imprisonment not only significantly lower than that to which the parties agreed, but less than a third of the minimum term of imprisonment, a sentence the Court does not find warranted under § 3553(a)."). Accordingly, in light of the factors set forth in Section 3553(a), this Court should deny Defendant's Motion.

## Conclusion

For these reasons, this Court should deny Defendant's motion for a sentence reduction with prejudice.

Respectfully submitted on this the 8th day of March, 2021.

                                          DARREN J. LAMARCA
                                          Acting United States Attorney

By:    s/*Shundral H. Cole*
          Shundral H. Cole (103003)
          Assistant U.S. Attorney
          1575 20th Avenue
          Gulfport, MS 39501
          (228)563-1570 (phone)
          (228) 563-1571 (fax)
          Shundral.Cole@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system to all ECF participant(s).

*s/Shundral H. Cole*
SHUNDRAL H. COLE
Assistant U.S. Attorney
